871 P.2d 14

**Patricio RODRIGUEZ, Claimant–Appellee/Cross–Appellant,**

**v.**

**McANALLY ENTERPRISES and Fireman's Fund, Respondents–Appellants/Cross–Appellees,**

**v.**

**McANALLY ENTERPRISES and Legion Insurance, Respondents–Appellees.**

**No. 14226.**

Court of Appeals of New Mexico.

Feb. 7, 1994.

Pedro P. Palacios, Las Cruces, for claimant-appellee, cross-appellant.

Katherine E. Tourek, Bradley & McCulloch, P.A., Albuquerque, for respondents-appellants, cross-appellees McAnally Enterprises and Fireman's Fund.

David McNeill, Jr., Weinbrenner, Richards, Paulowsky & Ramirez, P.A., Las Cruces, for respondent-appellee Legion Ins.

## OPINION

CHAVEZ, Judge.

Fireman's Fund Insurance Companies (Fireman's Fund) appeals and Worker cross-appeals from the Workers' Compensation Judge's (WCJ) compensation order. This case involves the consolidation of two claims for injuries suffered by Worker on April 11, 1989, (first accident) and on June 25, 1990, (second accident) while working at McAnally Enterprises (Employer) as a chicken farm laborer. Fireman's Fund insured Employer for the first accident, and Legion Insurance Company (Legion) insured Employer for the second accident.

The first accident occurred when Worker slipped and landed in a pit where chicken waste was collected. As a result of this accident, Worker fractured his tenth rib and suffered low back and elbow pain. In August 1989, Worker returned to work for Employer. Approximately ten months later, the second accident occurred when Worker again slipped, this time injuring his left wrist.

In July 1991, Worker was released back to work and was offered either the same position he had prior to the accidents or a position cleaning the light bulbs in the chicken houses. Worker never contacted Employer about the job offers and was eventually terminated. At trial, the WCJ found that Worker: (1) was able to return to his employment in some aspects and would not need vocational rehabilitation; (2) was offered jobs within his restrictions, but he did not accept them; (3) refused to even attempt to perform the jobs which were offered to him and which he was capable of performing; (4) was totally temporarily disabled from June 25, 1990, to July 17, 1991, as a result of the first accident; and (5) was 40% permanently partially disabled as a result of the first accident.

On appeal, Fireman's Fund asserts that the WCJ erred by finding that: (1) it was liable for temporary total disability benefits from June 25, 1990, to July 17, 1991; and (2) the compensation award for the first accident was not limited to the scheduled injury to the elbow. Unpersuaded by the arguments made by Fireman's Fund, we affirm the compensation order in its entirety. Worker's cross-appeal contends that the WCJ erred in not finding him totally disabled. Our motions panel previously dismissed Worker's cross-appeal, and we here explain our reasons for doing so.

## WORKER'S CROSS-APPEAL

Worker asserts that his cross-appeal was timely and raises the following issue of first impression: Whether SCRA 1986, 12–601 (Repl.1992), provides that the Rules of Appellate Procedure governing appeals from the district court do not commence to apply until after the filing of the docketing statement by the appellant in an administrative appeal. We hold that it does not.

SCRA 12–601(B) states,

Initiating the Appeal. Direct appeals from orders, decisions or actions of boards, commissions, administrative agencies or officials shall be taken by filing a notice of appeal or complaint on appeal with the appellate court clerk, together with the docket fee and proof of service thereof on the agency involved and all parties in accordance with Rule 12–307 within thirty

(30) days from the date of the order, decision or action appealed from. Thereafter, within thirty (30) days of the filing of the notice of appeal or complaint on appeal, the appellant shall file a docketing statement in accordance with Rule 12–208 and the appeal *shall thereafter proceed* in accordance with these rules, notwithstanding any provision of law to the contrary. (Emphasis added.)

Worker interprets the "shall thereafter proceed" language to mean that the appellate rules do not commence to apply until after appellant has filed a docketing statement. Thus, since Worker filed his notice of appeal before the filing of any docketing statement, Worker argues that his appeal was timely.

We disagree with Worker's interpretation. Nothing in SCRA 12–601 explicitly authorizes a party to file cross-appeals later than the ten days as specifically outlined in SCRA 1986, 12–201(A) (Repl.1992). To interpret the rule as Worker argues would be to assume that the Supreme Court adopted a rule inconsistent with a rule directly on point. We will not do so, because such a holding would lead to an inconsistent and absurd result. *See Gonzales v. Lovington Pub. Sch.,* 109 N.M. 365, 370, 785 P.2d 276, 281 (Ct.App. 1989), *cert. denied,* 109 N.M. 262, 784 P.2d 1005 (1990); *see also State v. Eden,* 108 N.M. 737, 741, 779 P.2d 114, 118 (Ct.App.) (same canons of construction applied to rules of procedure as those applied to statutes), *cert. denied,* 108 N.M. 681, 777 P.2d 1325 (1989). As such, we consider Rule 12–201(A), which specifically governs cross-appeals, as controlling.

In this case, it appears that Worker tried to proceed in accordance with SCRA 12–201(A) in that he filed a separate notice of cross-appeal and then filed a docketing statement within thirty days of it, rather than filing a docketing statement within thirty days of the original notice of appeal. However, Worker made the procedural error of filing his notice of appeal more than ten days from the date Employer filed its notice of appeal. Thus, Worker's appeal was untimely as provided by SCRA 12–201(A) and was appropriately dismissed.

■ Worker also argues that NMSA 1978, Section 39–3–8 (Repl.Pamp.1991), allowing fifteen days to file a cross-appeal, governs. However, since rules of appellate procedure govern over statutes which are inconsistent, SCRA 12–201(A) controls in this situation. *See American Auto. Ass'n v. State Corp. Comm'n,* 102 N.M. 527, 528, 697 P.2d 946, 947 (1985) (a rule adopted by the Supreme Court governs over an inconsistent statute). Consequently, Worker's arguments fail, and we dismiss his cross-appeal.

## FIREMAN'S FUND'S CLAIMS

■ Fireman's Fund is not taking the position that the WCJ erred in applying the law. Therefore, we review whether there was sufficient evidence to support the WCJ's result. When reviewing the sufficiency of evidence, we account for the whole record, including what fairly detracts from the result the fact finder reached. *See Herman v. Miners' Hosp.,* 111 N.M. 550, 552, 807 P.2d 734, 736 (1991). We defer to the fact finder's resolution of conflicts in the evidence and indulge all inferences in favor of the findings. *Id.* After doing so, we affirm if there is such evidence in the whole record that a reasonable mind would accept as adequate support for a finding. *Id.* In other words, if we can conscientiously say the evidence supporting a finding is substantial, we will not set it aside. *See Tallman v. ABF (Arkansas Best Freight),* 108 N.M. 124, 129, 767 P.2d 363, 368 (Ct.App.), *cert. denied,* 109 N.M. 33, 781 P.2d 305 (1988).

■ First, Fireman's Fund contends that it should not be responsible for total temporary disability benefits between June 25, 1990, to July 17, 1991, because the disability to Worker's left arm was the result of the second accident, when Legion was the insurer. To resolve this issue, we look to the definition of disability in what the parties concede is the applicable "third law" of Workers' compensation. Under the third law, disability is a measure of an inability to do work for which the particular Worker is fitted by age, experience, and knowledge. *See* NMSA 1978, §§ 52–1–25(A) & –26(B) (Repl.Pamp.1987). In support thereof, Fireman's Fund contends that Worker testified

that when he went back to work for Employer in August of 1989, he was performing the same duties he performed prior to the April 1989 accident. Furthermore, Fireman's Fund points to Dr. Diven's testimony in which he states that the reason Worker was taken from work was because of the wrist injury caused by the second accident.

However, as Legion points out, Dr. Diven testified that before the second accident Worker's left arm maladies included complaints of numbness and tingling, and Worker had plans for surgery to relieve the carpal tunnel symptoms. In addition, there was evidence that the surgery performed on Worker's left wrist was to correct degenerative problems aggravated by the first accident which pre-existed the second accident. As a consequence, evidence that Worker's surgery was planned before the second accident and that Worker's arm problems pre-existed the second accident is substantial evidence to support liability for Fireman's Fund.

 Second, Fireman's Fund argues that, regardless of who is liable for disability compensation, it should be no more than that allowed for a scheduled injury to the left elbow. *See* NMSA 1978, § 52–1–43(A) (Repl. Pamp.1987). The shortcoming in this argument is the assumption that the injury to Worker's elbow arising from the first accident was, as a matter of law, the only injury involved. Reading the WCJ's findings in a way that supports its judgment, we hold that the WCJ found that the sum total of all of Worker's injuries made him partially unable to work after his surgery related to the first accident. *See Herrera v. Roman Catholic Church,* 112 N.M. 717, 721, 819 P.2d 264, 268 (Ct.App.1991) (findings of the trial court will be construed so as to uphold the judgment rather than to reverse it, unless clearly erroneous or deficient). We reach this result because the WCJ's findings expressly determined whether a particular injury was nondisabling, such as those findings related to the Worker's 1990 face injury. In contrast, the findings regarding Worker's 1989 back, rib, and elbow injuries were not labeled as nondisabling. Therefore, we consider those injuries not expressly identified as nondisabling to be classified as disabling injuries.

Additionally we find substantial evidence to support this result. Dr. Diven gave Worker several different impairments for the back injury, the wrist injury, and the elbow injury. Dr. Watson also indicated that Worker suffered from multiple limitations for use of the left arm for lifting, gripping, pushing, pulling, or carrying, and could not pursue heavy lifting because of the limitation to his lower back. Dr. Watson also stated that Worker was seriously disabled by multiple injury conditions. Therefore, we hold there was substantial evidence to support the compensation order to the extent it relied on the fact that Worker's disability was not limited to a scheduled member or function.

We affirm the compensation order in its entirety and grant Worker's request for fees on appeal in the amount of $1,000.

**IT IS SO ORDERED.**

PICKARD and FLORES, JJ., concur.